### JOHN K. FAULKNER v. H. C. JENNINGS ET AL.

[Abstract Kentucky Law Reporter, Vol. 3—475.]

**Payment or Gift to Defraud Creditors.**

One may not make a gift of money to his wife and thereby defraud his creditors; but where his wife receives a farm by devise from her father who long before his death placed said daughter and her husband in possession, and the husband has the use of said land for a long term of years, rent free, and at the death of the testator there was not enough personal property to satisfy the debts, and the land devised to the daughter and her children is about to be sold to pay such debts, the husband, having had the use of the land for years, is under both a moral and legal obligation to pay the debt and relieve his wife's land, and when he does so his creditors, whose claims have accrued mostly since such payment, can not subject such land to sale to pay their claims.

**Duty of Husband and Father to Support His Family.**

The duty of a husband and father to support his wife and family is paramount to that of paying his debts. He owes to his wife and children such labor and means as may be necessary for their support and this includes the expenditure of both labor and means necessary to provide for them a habitation.

### APPEAL FROM GARRARD CIRCUIT COURT.

December 17, 1881.

OPINION BY JUDGE LEWIS:

Samuel Lusk, whose will was probated Feb. 13, 1872, devised to his daughter, Mary D. Jennings, during her life, the farm on which she then resided, supposed to contain 220 acres, for her separate use and benefit, free from the control, sale or disposition of her husband, and at her death, leaving issue, to go, although not absolutely, to such issue or descendants.

It appears that previous to his death, about 1865, the testator placed her in possession of the farm, and it was occupied and used by her and her husband, H. C. Jennings, free from rent from that time until Lusk died. After he died it was found that the personal property left by him was insufficient to pay the debts against his estate, and that the several parcels of land devised to his children would have to be charged with the payment of the deficiency. By a judgment of court, rendered in an action instituted for the purpose of settling his estate, the amount with

which each share was so charged was about $2,702.98, and the lands devised to them respectively were ordered to be sold to raise from each that sum. But to prevent a sale of the farm devised to Mary D. Jennings, her husband, H. C. Jennings, advanced and paid out of his own means the sum with which her farm was so incumbered.

There is some conflict as to the precise date or dates at which the money was paid by him. But from his own statement, which is probably correct, $1,000 of the amount was paid in December, 1872, $937.14 paid in February, 1874, and the residue, $775.00, was paid in the spring or summer of 1875.

July 1, 1875, W. J. Lusk, as principal, and J. K. Faulkner and H. C. Jennings as sureties, gave their promissory note to the National Bank of Lancaster for $9,574.45, due January 4, 1876, and to bear interest at the rate of ten per cent. per annum from its maturity until paid. It appears that the consideration of that note was for other notes given by the same parties about the middle of the year 1874, of which it was a renewal.

Afterwards judgment was rendered upon the note against Faulkner and Jennings. Lusk having died October 23, 1876, no judgment was rendered against him. An execution was rendered upon the judgment, and the amount of the debt unpaid, which had at the time been reduced to $4,039.37, was paid by Faulkner, to whom the judgment was then transferred by the bank. Subsequently execution was levied upon the property of Jennings, and the sum of $607.89 was made by a sale of his property, leaving due from him to Faulkner the sum of $2,019.68, and interest from December 22, 1876, subject to the credit of said sum of $607.89.

This action was brought by Faulkner against H. C. Jennings, his wife, Mary D. Jennings, and her children, all of whom are infants, and others with whom there appears to be no controversy, for the purpose of subjecting the 220 acres of land, devised, as before mentioned, to her and her children by Samuel Lusk, to the payment of the demands of his creditors, to the extent of the amount paid by him in discharge of the incumbrance of the land as aforesaid.

In addition to the facts already stated, it is alleged in the petition that H. C. Jennings paid the entire amount with which the 220 acres was charged on account of the indebtedness of

Samuel Lusk's estate, she paying no part of it, although so reported by the commissioner in the action to settle the estate; that in order to do so H. C. Jennings had to borrow the money for the purpose; that at the time he did so, he was indebted beyond his ability to pay, to the extent of insolvency, and the payments were made in fraud of the rights of his creditors and was an attempt to give his wife and her children said amount of money, and thus create a charge and indebtedness upon his own estate without valuable consideration to the prejudice of his own creditors.

H. C. Jennings and Mary D. Jennings filed a joint answer. In it they allege that for the sole consideration of his love for his daughter, Mary D. Jennings, and for the promotion of her interest, Samuel Lusk, some time before his death, put them in possession of the land, and H. C. Jennings used and cultivated and received the entire proceeds and profits of the land without payment of rent, before as well as subsequent to his death; that H. C. Jennings was under a legal and moral obligation to Mary D. Jennings to pay off and discharge the incumbrance upon the land; and that in consideration thereof, and not to cheat his creditors, such payments were made by him.

They deny that H. C. Jennings was insolvent at the time he created the indebtedness to enable him to make the payments, or was so when they were made, but was solvent and had good financial credit. They deny the payments made by him were an attempt to give money to his wife and children or create a charge upon his estate without consideration to the prejudice of his creditors.

Upon the trial of the action, judgment was rendered by the court dismissing the petition, and the plaintiff in the action has appealed therefrom. In the petition it is substantially alleged that the payments were made by H. C. Jennings with the intent to defraud his creditors, and also without valuable consideration therefor, and relief is sought upon the grounds contained in Rev. Stat. (1867), Ch. 40, §§ 1, 2. These two sections are as follows:

"Sec. 1. Every gift, conveyance, assignment, or transfer of, or change upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers, or other persons, and every bond or other evidence of debt given, suit commenced,

decree or judgment suffered, with like intent, shall be void as against such creditors, purchasers, and other persons. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.

"Sec. 2. Every gift, conveyance, assignment, transfer, or charge made by a debtor of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities, but shall not, on that account alone, be void as to creditors whose debts or demands are thereafter contracted, or as to purchasers with notice of the voluntary alienation or charge."

Under the operation of § 1, it is very questionable whether more than the life estate of Mary D. Jennings, if anything, can be subjected. For though the children may not be considered purchasers for a valuable consideration, still, being infants, they could not in fact or in legal contemplation have participated in the alleged fraud. But it is not necessary to decide that question. If the money was paid by H. C. Jennings either with the intent to defraud his creditors or without valuable consideration, the acts are void as to the plaintiff in this action, at least to the extent of such payments as were made subsequent to the creation of the bank debts of which the note dated July 1, 1875, was a renewal.

Therefore, as the determination of the question whether the payments by H. C. Jennings were made with or without a valuable consideration has a bearing upon, though not decisive of, the other question, whether they were made with intent to defraud his creditors, we will consider it first.

According to the policy of our law as always construed and recognized by this court, the duty of the husband and father to support his family is paramount to that of paying his debts. He has not the right to voluntarily and without consideration give, convey, assign or transfer his estate or create a charge upon it, to the injury of his existing creditors. But he owes to his wife and children whatever of his labor or means may be necessary for the suitable and comfortable support of his wife and children, and that includes the expenditure of both labor and means necessary to provide for them a habitation.

For several years previous to the death of Samuel Lusk, H. C. Jennings had the use and profits of the farm intended by the father solely for the use and benefit of his daughter and her children, free of rent, and has so used and enjoyed it ever since; and the evidence in this case shows conclusively that the value of the rents and profits of that farm, while so occupied by him, has greatly exceeded the amounts paid by him to prevent it being sold and sacrificed. His wife could, therefore, with entire justice, require him to relieve it of the charge upon it and save it as a home for her and her children. In our opinion, therefore, there was not only a moral obligation, but also such a legal obligation upon him to make the payments as a court of equity should uphold.

In our opinion the evidence in this case does not satisfactorily show that H. C. Jennings made the payments to relieve the land of his wife and children with the intent to defraud his creditors, in the meaning of the statute. It appears that up to and after July 1, 1875, when the note was given by W. J. Lusk, Faulkner and himself, he had considerable property and good financial credit, and could have met and paid all the debts he owed on his own account. It also appears that W. J. Lusk, up to and for some time after that date, had a considerable amount of real and personal property and financial credit.

As the two first payments to relieve the land of his wife and children were made some time before the execution of that note, and the last and smallest one was made about the time or shortly before the date of that note, and as he had no reason to believe that W. J. Lusk would fail in business and leave the note to be paid by Faulkner and himself as his sureties, it can not be fairly concluded that he made the payments with intent to defraud his creditors.

There are several other questions presented by counsel which it is not necessary to decide.

The judgment of the court below must be *affirmed.* Judge Hargis not sitting.

*Jas. A. Anderson, for appellant.*

*J. S. Vanwinkle, R. P. Jacobs, for appellees.*